## UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ILLINOIS
## EASTERN DIVISION

| | | |
|---|---|---|
| SOCIAL SECURITY ADMINISTRATION, | ) | |
| | ) | |
| Appellant, | ) | |
| | ) | No. 19 C 5882 |
| v. | ) | |
| | ) | |
| GRACE LOGAN, | ) | Judge Thomas M. Durkin |
| | ) | |
| Appellee. | ) | |
| | ) | |
| SOCIAL SECURITY ADMINISTRATION, | ) | |
| | ) | |
| Appellant, | ) | |
| | ) | No. 19 C 6567 |
| v. | ) | |
| | ) | |
| GRACE LOGAN, | ) | Judge Thomas M. Durkin |
| | ) | |
| Appellee. | ) | |

## MEMORANDUM OPINION AND ORDER

The Social Security Administration ("SSA") owes Grace Logan a monthly retirement insurance benefit, and in turn, Ms. Logan owes the SSA a debt she incurred by continuing to collect the benefits of her then-deceased grandmother. The SSA began deducting from Ms. Logan's monthly benefit in order to recover Ms. Logan's debt. Ms. Logan subsequently commenced a Chapter 13 case under the Bankruptcy Code. The question became whether the SSA's monthly withholding was a setoff of the amount Ms. Logan was due (subject to the automatic stay that applies in bankruptcy), or a recoupment of the debt she owes (exempt from the stay). The

bankruptcy court concluded that it was the former, and as such entered orders: (1) denying the SSA's motion to confirm that the automatic stay does not apply to its withholding of Ms. Logan's retirement insurance benefits; and (2) modifying Ms. Logan's Chapter 13 plan to cap such withholding at $600 per month. The SSA appealed both orders. For the following reasons, those orders are affirmed.

## Background

The underlying facts are not in dispute. Ms. Logan is a widow in her late 60s whose income consists of Social Security retirement insurance benefits of $1,428 per month, pension payments of $90 per month, and food stamps. She suffers from asthma and is unable to work. In 2014, the SSA's Office of Inspector General determined after an investigation that Ms. Logan had collected her grandmother's retirement insurance benefits into a joint account she held with her grandmother for almost four years after her death. Ms. Logan admitted that she had done so, and that she had applied the benefit payments toward her family's expenses. Ultimately, Ms. Logan was assessed a total civil monetary penalty of $67,652.60, and the SSA began withholding from Ms. Logan's own $1,428 monthly retirement insurance benefit in order to recover her debt.

Ms. Logan commenced a Chapter 13 bankruptcy case in 2016. The SSA filed an adversary proceeding in that case seeking a determination that Ms. Logan's debt to it was non-dischargeable under Section 523(a)(2)(A) of the Bankruptcy Code because the benefits were fraudulently obtained. A consent judgment was entered thereafter pursuant to which $29,983 of Ms. Logan's remaining $54,983 debt to the

SSA was designated as non-dischargeable. But Ms. Logan was unable to complete her plan payments, and the case was dismissed.

In late 2018, Ms. Logan commenced the Chapter 13 bankruptcy case that underlies this appeal. At that point, she had repaid $31,528 of her SSA debt through the SSA's withholding of $600 per month from her own retirement insurance benefits, reducing her monthly benefit payment from $1,428 to $828 per month, and leaving a total remaining debt of $36,124.[1] The SSA filed an adversary proceeding in April 2019 seeking a determination that the balance of Ms. Logan's debt was non-dischargeable. That same month, Ms. Logan moved to modify her Chapter 13 plan to make clear that she would repay the remainder of her non-dischargeable debt to SSA over the life of that plan, and that the SSA's withholdings would be capped at $600 per month ("Plan Modification Motion"). In response, the SSA moved for a determination that SSA's withholdings were in the nature of recoupment, and therefore were not subject to the automatic stay ("Recoupment Motion"). Through the Recoupment Motion, the SSA sought to keep the entirety of Ms. Logan's monthly retirement insurance benefit until such time as her debt was repaid.

Ultimately, the bankruptcy court concluded that the SSA's collection of Ms. Logan's debt through withholdings was in the nature of a setoff, not recoupment, and was subject to the bankruptcy stay. Accordingly, the court denied the Recoupment Motion and granted Ms. Logan's Plan Modification Motion, capping the SSA's

---

[1] The SSA indicates that it withheld Ms. Logan's full benefit for various periods of time prior to the underlying Chapter 13 bankruptcy.

withholdings at $600 per month. The court also dismissed the SSA's adversary proceeding as barred by the doctrine of *res judicata*, citing the 2016 consent judgment that resolved the dischargeability issue.

SSA timely appealed the bankruptcy court's orders on both the Recoupment and Plan Modification Motions. According to Ms. Logan, she will face "almost complete destitution" and possible homelessness if those orders are reversed.

## Standard of Review

"District courts sit as appellate courts when hearing appeals from bankruptcy courts." *Hijjawi v. Five N. Wabash Condo Ass'n*, 491 B.R. 876, 880 (N.D. Ill. 2013). The bankruptcy court's factual findings are scrutinized for clear error, while its legal conclusions are reviewed *de novo. Kovacs v. United States*, 739 F.3d 1020, 1023 (7th Cir. 2014). The Court reviews the bankruptcy court's orders *de novo*, because the question is whether the (undisputed) facts were properly applied to the law concerning recoupment. *See In re Thigpen*, 590 B.R. 810, 812 (N.D. Ill. 2018) (reviewing bankruptcy court's decision on the recoupment issue *de novo*) (citing *In re Terry*, 687 F.3d 961, 963 (8th Cir. 2012) (same); *In re Holyoke Nursing Home, Inc.*, 372 F.3d 1, 3 (1st Cir. 2004) (same)).

## Analysis

The issue in this case is whether the bankruptcy court properly determined that the SSA's withholdings are in the nature of a setoff rather than recoupment. The distinction matters because filing a bankruptcy petition operates as an automatic stay of "the setoff of any debt owing to the debtor that arose before the commencement

4

of the [bankruptcy] case . . . against any claim against the debtor." *Id.* § 362(a)(7); *see also Citizens Bank of Md. v. Strumpf*, 516 U.S. 16, 20 (1995) (§ 362 imposes a "restriction upon when an actual setoff may be effected—which is to say, not during the automatic stay"). In contrast, property that is subject to the recoupment doctrine is exempt from the stay. *See In re McMahon*, 129 F.3d 93, 96 (2d Cir. 1997) ("While a 'setoff' is subject to the automatic stay provision of 11 U.S.C. § 362, a recoupment is not."); *United States v. Consumer Health Servs. of Am., Inc.*, 108 F.3d 390, 395 (D.C. Cir. 1997) (the recoupment doctrine "exempts a debt from the automatic stay when the debt is inextricably tied up in the post-petition claim").

Recoupment is an equitable defense to payment that applies when "a debtor's claim is based on a transaction in which the creditor has a claim against the debtor, and equity demands that the debtor's claim cannot be considered without taking account of the creditor's claim." *In re Chapman*, 265 B.R. 796, 807 (Bankr. N.D. Ill. 2001). To qualify as recoupment, "[t]he transaction upon which the debtor's claim is based must be so closely intertwined with the creditor's claim that the amount of the former cannot be fairly determined without resolving the latter." *Id.*; *see also Consumer Health*, 108 F.3d at 395 (the recoupment doctrine "exempts a debt from the automatic stay when the debt is inextricably tied up in the post-petition claim"). Accordingly, courts recognize recoupment only when the parties' mutual obligations arise out of the "same transaction. " *N. Tr. Co. v. Peters*, 69 F.3d 123, 135 (7th Cir. 1995). In contrast, setoff applies if the obligations arise from different transactions. *In re Univ. Med. Ctr.*, 973 F.2d 1065, 1079-80 (3d Cir. 1992).

5

Two slightly different standards have developed for determining whether mutual obligations arise from the same transaction. The narrower of the two is the "single integrated transaction" standard that was first recognized by the Third Circuit, and is followed by the Second, Eighth and Tenth Circuits. *See Univ. Med. Ctr.*, 973 F.2d at 1081; *Westinghouse Credit Corp. v. D'Urso*, 278 F.3d 138, 146 (2d Cir. 2002); *In re Beaumont*, 586 F.3d 776, 781 (10th Cir. 2009); *In re Terry*, 687 F.3d 961, 963 (8th Cir. 2012). To justify recoupment during bankruptcy under that standard, mutual obligations must "arise out of a single integrated transaction so that it would be inequitable for the debtor to enjoy the benefits of that transaction without also meeting its obligations." *Beaumont*, 586 F.3d at 963 (*quoting Univ. Med. Ctr.*, 973 F.2d at 1081). The standard has been applied to deny recoupment in bankruptcy even when the debts arise under the same contract, so long as the debts are "independently determinable." *Univ. Med. Ctr.*, 973 F.2d at 1081. The broader of the two is the "logical relationship" standard followed by the First, Ninth and D.C. Circuit Courts of Appeal. *See Holyoke Nursing Home*, 372 F.3d at 4; *In re TLC Hosps., Inc.*, 224 F.3d 1008, 1013-14 (9th Cir. 2000); *Consumer Health*, 108 F.3d at 395. Under that standard, courts typically analyze the entire contract between the parties to determine whether the mutual debts are sufficiently related, despite that they may arise at different times and under differing circumstances. *Consumer Health*, 108 F.3d at 395. The Seventh Circuit has not yet adopted a standard.

Unsurprisingly, the SSA contends that the "logical relationship" standard should apply here, while Ms. Logan argues for the "single integrated transaction"

standard. But Ms. Logan maintains that her pre-petition debt to the SSA is not logically related to her post-petition right to ongoing benefits in any case. The Court agrees that recoupment is not justified even under this broader standard.

Indeed, the court in *In re Johnson* noted that the "logical relationship" standard is construed narrowly in the bankruptcy context because recoupment, "which favors the creditor who invokes the doctrine over other creditors, is an exception to the general policy in bankruptcy 'favoring the equal treatment of creditors.'" 586 B.R. 449, 458 (N.D. Ill. 2018) (quoting *Chapman*, 265 B.R. at 807); *see also In re St. Francis Physician Network*, 213 B.R. 710, 719 (N.D. Ill. 1997) (recoupment is an equitable doctrine that must be construed narrowly to avoid paying out one creditor at the expense of others). In so stating, the court specifically rejected the argument the SSA makes here; that is, that the standard should be construed liberally because the equitable doctrine of recoupment was the historical predecessor to the compulsory counterclaim, and "logical transaction" is broadly construed in determining whether a counterclaim is compulsory under the Federal Rules of Civil Procedure. *Johnson*, 586 B.R. at 457-58. In a similar vein, the court in *In re Thigpen* acknowledged that "[t]he Ninth Circuit has warned that the 'logical relationship' analysis 'is not to be applied so loosely that multiple occurrences in any continuous commercial relationship would constitute one transaction.'" 590 B.R. 810, 818 (N.D. Ill. 2018) (quoting *TLC Hosps.*, 224 F.3d at 1012). Instead, the proper scope of the inquiry is confined to "whether the creditor's claim 'arises from the same aggregate

set of operative facts as' the debtor's claim." *Id.* (quoting *In re Madigan*, 270 B.R. 749, 755 (9th Cir. 2001)).

The mutual debts between the parties here involve materially different operative facts. While the SSA's pre-petition claim against Ms. Logan concerns her improper collection of her grandmother's retirement benefits after her death some years ago, Ms. Logan's post-petition claim concerns her own ongoing retirement benefits that she earned throughout her working life. As such, the only real connection between the mutual debts is that they arise from the parties' relationship. And that is not enough even under the "logical relationship" standard. *See id.* (mutual debts not logically related because "while arising from a continuous relationship between the parties," they "involve[d] materially different operative facts").

Nevertheless, the SSA points to *In re Wernick*, in which another court applied the "logical relationship" standard to hold on similar facts that the SSA's withholding of retirement insurance benefits to recover fraudulently obtained pre-petition overpayments was recoupment. 2016 WL 7212508 (N.D. Ill. Dec. 13, 2016). In so doing, the court likened such withholdings to those made to recover overpayments to medical service providers in the Medicare context, pointing to the underlying statutory schemes. *Id.* at *3-4. The Medicare Act provides in relevant part that:

> The Secretary shall periodically determine the amount which should be paid under this part to each provider of services with respect to the services furnished by it, and the provider of services shall be paid, at such time or times as the Secretary believes appropriate . . . the amounts so determined, *with necessary adjustments on account of previously made overpayments or underpayments.*

42 U.S.C. § 1395g(a) (emphasis added). Many—though not all—courts have held that this language reflects that adjustments for prior overpayments are an integral part of calculating payments due to providers, and therefore that pre-petition debt and payment for post-petition services should be considered one transaction for recoupment purposes. *See Consumer Health*, 108 F.3d at 395 ("Since [the Medicare program] requires the Secretary to take into account pre-petition overpayments in order to calculate a post-petition claim . . . Congress rather clearly indicated that it wanted a provider's stream of services to be considered one transaction"); *see also Holyoke Nursing Home, Inc.*, 372 F.3d at 3 (deduction of pre-petition Medicare overpayments is a transaction in the nature of recoupment); *TLC Hosps.*, 224 F.3d at 1013 (statutorily provided-for Medicare reimbursement system constitutes a recoupment); *but see Univ Med. Ctr.*, 973 F.2d at 1081-82 (recoupment does not apply in Medicare context because each payment provides compensation for different services performed in a specific time period, representing a separate transaction).

The SSA argues (and the court in *Wernick* held) that the Social Security Act and its regulations dictate the same result where benefit overpayments are obtained through fraud. The Social Security Act provides that retirement insurance overpayments are to be recovered by decreasing any payments to which the overpaid person is entitled. Specifically, "no benefit for any month and no lump sum is payable under title II of the act . . . until an amount equal to the amount of the overpayment has been withheld or refunded." 42 U.S.C. § 404(a)(1)(A); 20 C.F.R. § 404.502(a)(1). But the Act goes on to provide that no withholding of payments or recovery by the

SSA will be made from "any person who is without fault if such adjustment or recovery would defeat the purpose of this subchapter or would be against equity and good conscience." 42 U.S.C. § 404(b)(1). The Act contains no similar language concerning benefit recipients who received overpayments "with" fault. Accordingly, the court in *Wernick* held that the statutory scheme reflects Congress's intent that any withholding to account for fraudulently obtained overpayments is recoupment that does not violate the automatic stay. 2016 WL 7212508, at *4.

In response, Ms. Logan points to other decisions holding that the SSA's withholding of pre-petition overpayments from post-petition benefits represented a setoff subject to the automatic stay. *See In re Johnson*, 586 B.R. 449 (N.D. Ill. 2018); *In re Thigpen*, 590 B.R. 810 (N.D. Ill. 2018); *Lee v. Schweiker*, 739 F.2d 870 (3d Cir. 1984). Yet the overpayments in *Lee* were not fraudulently obtained. And while the overpayments in both *Johnson* and *Thigpen* were, those cases are distinguishable because the overpayments there were made pursuant to one Social Security benefit program, while the ongoing post-petition benefits arose under another. *See Johnson*, 586 B.R. at 457 (overpayments made pursuant to supplemental security income program, and outstanding benefits arose under retirement program); *see also Thigpen*, 590 B.R. at 818 (reverse). The courts in both cases relied on that fact in holding that the debts were not part of the same transaction. *See Johnson*, 586 B.R. at 457 (debts not logically related in part because "SSI and RIB are two separate benefit programs"); *Thigpen*, 590 B.R. at 818 (same).

Those differences notwithstanding, a careful analysis of *Johnson* and *Thigpen* suggests that both courts would conclude that the SSA's withholdings in this case constitute a setoff. As discussed *supra*, the court in each case highlighted the need to construe even the "logical relationship" standard narrowly, and emphasized the requirement that the debts arise from the same operative facts. The Social Security Act's statutory scheme does not dictate otherwise. That it requires the SSA to withhold benefits *before* bankruptcy does not mean that it requires the same *during* bankruptcy (and notwithstanding the stay). *Johnson*, 586 B.R. at 457 (the question "is not whether a statute allows recovery of overpaid benefits outside of bankruptcy," but rather "whether that same statute is, without more, sufficient to allow recoupment during bankruptcy, irrespective of the automatic stay"). In other words, a statutory scheme alone cannot connect two otherwise unrelated debts. *See id.* (Section 404 "is insufficient, without more, to make two otherwise unrelated debts part of the same transaction").

This holding is not inconsistent with the decisions construing recoupment in the Medicare context, because in those cases, the providers agreed to receive compensation on an estimated basis, and "underpayments and overpayments are an expected and inevitable result of th[e] payment system." *TLC Hosps.*, 223 F.3d at 1011-12. But in the Social Security context, and notwithstanding the statutory scheme described above, the SSA does not "enter into arrangements with its beneficiaries in which it anticipates underpaying them as a logical consequence of earlier fraudulent overpayments." *Johnson*, 586 B.R. at 457 (citing *TLC Hosps.*, 224

F.3d at 1011-12). Indeed, the SSA does not enter into agreements with its benefit recipients at all; Social Security benefits are statutory entitlements that accrue on a month-to-month basis simply by surviving to the next month. As such, this Court respectfully disagrees with the holding in *Wernick* that is based on that statutory scheme. *See id.* (disagreeing with *Wernick* because "the two debts here are not logically related, and the statute does not make them so"). To hold otherwise would run contrary to the policies behind both the Bankruptcy Code and the Social Security Act. *See Lee*, 739 F.2d at 876 (declining to construe the recoupment doctrine so broadly as to run afoul of Social Security's "primary purpose" to provide "income security"); *see also In re Malinowski*, 156 F.3d 131, 134 (2d Cir. 1998) (recoupment should not be broadened "in contravention of the federal bankruptcy policies of debtor protection and equal distribution to creditors").

In closing, it is worth reiterating that the SSA is not left without a remedy; the remainder of Ms. Logan's non-dischargeable debt will be repaid through withholdings during the life of her Chapter 13 plan. This coupled with Ms. Logan's poverty provides another reason to deny recoupment. *See In re Gardens Reg'l Hosp. & Med. Ctr., Inc.*, 975 F.3d 926, 934-35 (9th Cir. 2020) ("courts should apply the recoupment doctrine in bankruptcy cases only when it would . . . be inequitable for the debtor to enjoy the benefits of that transaction without meeting its obligations") (internal quotations and citations omitted). The bankruptcy court correctly determined that the SSA's withholdings are in the nature of a setoff that is subject to the stay. Accordingly, its orders are affirmed.

## Conclusion

In sum, the mutual debts in this case do not arise from the same transaction, and Ms. Logan's Chapter 13 bankruptcy plan provides that the remainder of her non-dischargeable debt to the SSA will be repaid in full through withholdings from her own retirement insurance benefits. As such, it would be improper and inequitable to apply the recoupment doctrine in this case. The Court directs the clerk to enter judgment affirming the bankruptcy court orders at issue.

ENTERED:

_____
Honorable Thomas M. Durkin
United States District Judge

Dated: December 21, 2020

13